UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| APRIL L. MOORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:13-cv-237-SLC |
| | ) |
| LIFE, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This is an employment discrimination action in which *pro se*[1] Plaintiff April L. Moore ("Moore") alleges that her former employer, Defendant LIFE, Inc. ("LIFE"), wrongfully terminated her on the basis of her race, in violation of her federally protected rights under Title VII of the Civil Rights Act and 42 U.S.C. § 1981. (DE 1 ¶ 8). Before the Court is a motion for summary judgment filed by LIFE. (DE 21). This motion has been fully briefed by the parties. (DE 22, 37, 38). Also before the Court is LIFE's motion to strike Moore's response in opposition to the motion for summary judgment pursuant to N.D. Ind. L.R. 56-1(e). (DE 39). Moore did not file any response to LIFE's motion to strike within the time permitted under N.D. Ind. L.R. 7-1(d)(2)(A).

These motions are now ripe for adjudication. Before addressing LIFE's motion for summary judgment (DE 21), the Court must first address the motion to strike (DE 39).

### I. MOTION TO STRIKE

Because the Court must determine what evidentiary materials are before it for purposes of

---

[1] Moore was initially represented by counsel on this matter, but her attorneys have since withdrawn from representing her in this case. (DE 33). After being given time to retain new counsel, Moore advised the Court that she would be proceeding *pro se* in this action. (DE 35).

summary judgment, the Court must first address LIFE's motion to strike. LIFE has moved to strike Moore's response—consisting of Moore's statement, the statement of Adidas Moore, and the statement of Gloria Craig—in its entirety, as they are not sworn affidavits and do not comply with Rule 56's requirements for affidavits in support of or opposition to motions for summary judgment. (DE 39 ¶¶ 1-3, 5). LIFE's motion to strike Moore's response and accompanying statements (DE 39) will be GRANTED for the reasons addressed herein.

A *pro se* litigant is entitled to receive notice of the consequences of failure to respond to a motion for summary judgment, and "this notice should include both the text of Rule 56(e) and a short and plain statement in ordinary English that any factual assertion in the movant's affidavits will be taken as true by the district court unless the non-movant contradicts the movant with counter-affidavits or other documentary evidence." *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992). Rule 56 states that affidavits filed in support of summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "'On a motion for summary judgment, a court *must not* consider those parts of an affidavit that are insufficient under Rule 56[(c)(4)].'" *Sexson v. State Farm Fire & Cas. Co.*, 61 F. App'x 267, 270 (7th Cir. 2003) (quoting *Adusumilli v. City of Chi.*, 164 F.3d 353, 359 (7th Cir. 1998)); *see also Paniaguas v. Aldon Cos.*, No. 2:04-CV-468-PRC, 2006 WL 2568210, at *4 (N.D. Ind. Sept. 5, 2006) (citing *Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1148-49 (7th Cir. 1989); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989)) ("An affidavit not in compliance with Rule 56 can neither lend support to, nor defeat, a summary judgment motion."). "Affidavits are admissible in summary judgment proceedings if they are made under penalties of perjury;

only unsworn documents purporting to be affidavits may be rejected." *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) (citing 28 U.S.C.A. § 1746 (West Supp. 1984); *Adickes v, S.H. Kress & Co.*, 398 U.S. 144, 157 n.16 (1970)). However, "so long as the documents comply with 28 U.S.C. § 1746['s requirement that they be made under penalty of perjury], and in the interests of justice, a district court should not be unnecessarily hyper-technical and overly harsh on a party who unintentionally fails to make certain that all technical, non-substantive requirements of execution are satisfied." *Id.*

On February 12, 2015, the Court issued a notice to Moore, along with a copy of Federal Rule of Civil Procedure 56, informing her that LIFE had filed a motion for summary judgment on Moore's claims against LIFE. (DE 36). The notice informed Moore of her obligation to respond to LIFE's motion for summary judgment, noting that the Court would accept the factual assertions presented by LIFE in the affidavits and documents it submitted with its motion as true unless Moore provided "affidavits or other documentary evidence contradicting the assertion." (DE 36 at 1). Further, the Court warned Moore that failure to respond with such affidavits or other documentary evidence contradicting LIFE's factual assertions "would be the equivalent of failing to present any evidence in [her] favor at a trial." (DE 36 at 1). The Court's notice informed Moore that if she chose to respond to LIFE's motion for summary judgment, her "response must include or be supported by sworn statements or other responsive materials," and warned that she "cannot merely rely upon any conflict or inconsistency between the contents of the complaint and the affidavit(s) or other sworn materials filed in support of [LIFE's] motion." (DE 36 at 2). Additionally, the Court explained that if Moore chose to submit "affidavit or affidavits in support of [her] response, the facts in the affidavits must be personally known to the

3

person making the affidavit and not be hearsay; the facts must be specific and not general." (DE 36 at 2). The Court made clear that "[m]erely denying the facts in the sworn material filed by [LIFE] in support of its motion or giving opinions or beliefs is not enough." (DE 36 at 2). Finally, the Court warned Moore that failure to "respond to the summary judgment motion with sworn statements which contradict important facts claimed by [LIFE] in its sworn materials" would result in Moore "los[ing] this lawsuit, in whole or in part, if the Court determines that, under those unchallenged facts, [LIFE] is entitled to judgment under the law." (DE 36 at 2).

On March 12, 2015, Moore filed three documents in response to LIFE's motion for summary judgment. (DE 37). Each of these documents is a letter; the first document is signed by April Moore, the plaintiff in this action, and is dated March 12, 2015 (DE 37 at 1); the second document is signed by Adidas Moore and is dated March 12, 2015 (DE 37 at 2); and the third document is signed by Gloria Craig and is dated March 12, 2015 (DE 37 at 3). Each of the letters has the seal and signature of a notary public, but none of the letters state that they were sworn as true before the notary public. (DE 37 at 1-3). Further, none of the letters state that they were sworn under penalty of perjury. The statements do not indicate in any way that the authors of the statements made the statements under oath, signed the statements in the presence of the notary, or even that the authors were ever in the presence of the notary. Furthermore, the notary's signature and stamp do not indicate the date the notary signed the documents. Because these three statements were not made under oath in the presence of the notary and do not state that they were made under penalty of perjury, they are not admissible for the Court's consideration of the motion for summary judgment. *See Pfeil*, 757 F.2d at 859 ("An unsworn statement does not meet the requirements of Rule 56[(c)(4)]."); *Adusumilli*, 164 F.3d at 359 ("On a motion for

4

summary judgment, a court must not consider those parts of an affidavit that are insufficient under Rule 56[(c)(4)].").

Accordingly, for these reasons, LIFE's motion to strike Moore's response (DE 39) is GRANTED. The Court will therefore not consider the three statements submitted by Moore in her response as establishing any factual evidence when the Court evaluates LIFE's motion for summary judgment.

## II. MOTION FOR SUMMARY JUDGMENT

LIFE's motion for summary judgment (DE 65) will be GRANTED for the reasons that follow.

### *A. Legal Standard*

On a motion for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770 (citation omitted). A court must construe the record in the light most favorable to the nonmoving party

and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* (citation omitted). However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

### B. Facts and Background

In Moore's complaint, she alleges that she was terminated by LIFE on or about July 29, 2011, for improperly leaving her work site and for committing fraud, despite the fact that Moore states she was given permission to leave work and that she had not committed any fraud. (DE 1 ¶ 7). Moore alleges that LIFE's reasons for her termination are false and pretexual, and she states that she was actually discriminated against and wrongfully terminated on the basis of her race or color in violation of her federally protected rights under Title VII and § 1981. (DE 1 ¶ 8).

In its statement of the facts, LIFE takes the position that the co-owners of LIFE "decided to terminate Moore's employment for violation of company policies in that she had unauthorized absences from work during scheduled work hours and falsified her time sheet for May 21, 2011 and July 2, 2011." (DE 22 at 6 (citing DE 21-2 ¶ 11; DE 21-3 ¶ 4)). LIFE has supported its position with deposition excerpts, various affidavits, and company policies and records. (DE 21-1 to 21-3).

Moore, in her response, argues that LIFE does not have original time sheets or original daily visit notes with her original signature; that LIFE had a conflict of interest because the house supervisor was supervising her sister, daughter, and cousin, who were able to leave the house without permission; that Marci Reinbolt has been committing Medicaid fraud for several years

without being disciplined; and that, "in conclusion," Moore was discriminated against and treated unfairly based on her race. (DE 37 at 1). Moore has attached the statements of two other previous employees of LIFE in support of her response.[2] (DE 37 at 2-3).

Moore's response does not provide a "Statement of Genuine Disputes" as required by the local rules. N.D. Ind. L.R. 56-1(b)(2) ("The response brief or its appendix must include a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary."); *see Waldridge*, 24 F.3d at 922 ("We have repeatedly upheld the strict enforcement of these [local district court] rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts.") (collecting cases). As noted above in the Court's consideration of LIFE's motion to strike, Moore's response does not include any admissible evidence by way of sworn statements or sworn deposition testimony. Furthermore, Moore's response does not articulate facts upon which the parties disagree, but rather makes unrelated allegations in the first paragraph and vague argument in the second paragraph. (DE 37 at 1). Thus, the basis for the facts in this summary judgment analysis will be the evidence submitted by LIFE, namely excerpts from Moore's deposition and affidavits and documents provided by LIFE.

Moore was hired by LIFE to be a weekend direct care staff employee on September 4, 2008, after she was interviewed by Marci Reinbolt, one of the co-owners of LIFE. (DE 21-1 at

---

[2] As discussed above in the Court's analysis of LIFE's motion to strike, these statements are unsworn and do not meet Rule 56(c)(4)'s requirements for affidavits made to support or oppose a motion for summary judgment. Thus, these statements will not be considered by the Court as establishing any factual evidence.

2-4; DE 21-2 ¶¶ 2-3). Moore received a description of the direct care staff position from Reinbolt. (DE 21-1 at 4). Moore was to work 7:00 a.m. to 7:00 p.m. every weekend providing care to three disabled women at a home located at 8711 Shearwater Pass in Fort Wayne, Indiana. (DE 21-1 at 5-6; DE 21-2 ¶ 5). LIFE staffed the home with two direct care employees at all times due to the needs of the disabled individuals in the home and to comply with Medicaid guidelines. (DE 21-2 ¶ 5; DE 21-3 ¶ 2).

LIFE's direct care staff members receive training on topics including attendance and timekeeping, because federal and state laws require LIFE to maintain accurate time records for Medicaid reimbursement. (DE 21-2 ¶ 6). Staff members, including Moore, were trained to record their start and end times for each day worked, and they were instructed to indicate on their time sheets if they left their assigned shift for any reason. (DE 21-1 at 7-8; DE 21-2 ¶ 6). Direct care staff members were trained that they must receive permission before leaving their scheduled shift for any reason. (DE 21-2 ¶ 7). Staff members were trained that any falsification of time records would result in disciplinary action, including potential termination of employment. (DE 21-1 at 10-11; DE 21-2 ¶ 7). Employees, including Moore, were aware that writing down that they were working when they were not constituted falsification of their time sheets. (DE 21-1 at 11). The employees, including Moore, were instructed to call a supervisor if an emergency situation came up when they were supposed to be working. (DE 21-1 at 11-12; DE 21-2 ¶ 7). Furthermore, employees, including Moore, signed a reminder notice that stated employees had to cover all scheduled hours; that any violation of this rule would result in disciplinary actions up to and including termination; that employees must contact their supervisor if an emergency situation arises; and that the employees must obtain permission and someone must be found to cover the

8

shift before an employee can leave the site. (DE 21-1 at 31).

Moore knew that there had to always be two staff members in the house at all times. (DE 21-1 at 42-43). Moore acknowledged that there was always another direct care staff member working at the house when she was working at the house with the three disabled women. (DE 21-1 at 42). Moore was aware that she should call her supervisor if she could not work, and she was aware that she should call Reinbolt if she was unable to reach her supervisor when she was unable to work a scheduled shift. (DE 21-1 at 45). Moore acknowledged that if an employee falsified time records, the falsification would result in the employee's dismissal. (DE 21-1 at 16).

On May 21, 2011, Moore was scheduled to work from 7:00 a.m. to 5:00 p.m. (DE 21-2 ¶ 8). Moore left the house during her shift to purchase ant bait at the Three Rivers Natural Grocery Deli & Café. (DE 21-1 at 20; DE 21-2 ¶ 8; DE 21-2 at 12). Reinbolt states that Moore did not have permission to leave the house to purchase the ant bait, as her doing so left only one direct care staff member at the house with the three disabled clients, in violation of company policy and Medicare's guidelines. (DE 21-2 ¶ 8). In her deposition testimony, when Moore was asked if someone told her to go purchase the ant bait, she stated that she had asked the person who was working that day, and that she thinks it was a person named Ron. (DE 21-1 at 20). Moore's time sheet for May 21, 2011, indicates that she worked from 7:00 a.m. to 5:00 p.m. that day, and it does not show that she was absent from the home during her shift. (DE 21-2 ¶ 9; DE 21-2 at 13).

On July 2, 2011, Moore was scheduled to work from 7:00 a.m. to 8:00 p.m. (DE 21-1 at 22). Karen Mitchell was the other direct care staff person working at the house with Moore that day. (DE 21-1 at 23). Moore had a family emergency involving her grandmother, who was

9

being transferred from the ICU to Charter Beacon's health care facility. (DE 21-1 at 26). Moore's father called her at around 12:00 or 12:30 p.m. regarding her grandmother, but Moore did not leave the house until 3:30 p.m. (DE 21-1 at 25, 27). Moore told Karen Mitchell that she had to leave work because of the situation with her grandmother. (DE 21-1 at 29). Moore's supervisor was on vacation that day, so Moore did not call her supervisor. (DE 21-1 at 27). Moore did not call either of the owners of the company, although she had access to their phone numbers. (DE 21-1 at 28). When Moore left the house at 3:30 p.m. on July 2, 2011, all three clients were present at the house, and Karen Mitchell was the only direct care staff person in the home. (DE 21-1 at 30). Moore did not contact anyone to try to fill her shift because she was planning to come back to finish her shift that day. (DE 21-1 at 30).

Moore did not have permission to leave her work site at the house on July 2, 2011. (DE 21-2 ¶ 10). Moore completed her time sheet for July 2, 2011, stating that she had worked from 7:00 a.m. to 3:30 p.m. and from 6:00 p.m. to 8:00 p.m. However, Kathy Boeslund, one of the co-owners of LIFE, went to the house around 12:30 p.m. on July 2, 2011, and Moore was not at the house when Boeslund arrived. (DE 21-3 ¶ 2). Boeslund states that there was only one direct care staff member at the house when she arrived there. (DE 21-3 ¶ 2). Boeslund returned to the house at 6:00 p.m., but Moore was not back at the house. (DE 21-3 ¶ 2).[3]

Reinbolt states in her affidavit that she and Boeslund "decided to terminate Moore's

---

[3] While Boeslund states in her affidavit that she was informed by staff that Moore had left the house prior to Boeslund's arrival at 12:30 p.m. on July 2, 2011, and further states that she was informed by staff that Moore did not return to work until 6:30 p.m. that day (DE 21-3 ¶ 2), these statements are hearsay and are not admissible evidence for the Court's consideration of Defendants' motion for summary judgment. *See Pender v. United States*, 866 F. Supp. 1129, 1133 (N.D. Ind. 1994) (citing *Hong v. Children's Memorial Hosp.*, 993 F.2d 1257, 1264-65 (7th Cir. 1993)) ("[I]nadmissible hearsay contained in affidavits . . . may not be considered.").

employment because she violated company policies in that she had unauthorized absences from work during scheduled work hours," specifically that "[o]n both May 21, 2011 and July 2, 2011, Moore left her worksite without prior approval" and "did not correctly fill out her timesheets indicating that she left work during her shift." (DE 21-2 ¶ 11). Boeslund states in her affidavit that Reinbolt decided to terminate Moore for these reasons. (DE 21-3 ¶ 4).

## C. Discussion

LIFE argues that it should be granted summary judgment on Moore's claims against it because LIFE contends that "Moore's race discrimination claims lack both evidentiary and legal support." (DE 22 at 1). LIFE also argues that it is entitled to an inference of nondiscrimination under the common actor presumption, as Reinbolt both hired and fired Moore, for reasons that had nothing to do with her race. (DE 22 at 1). LIFE contends that it is entitled to summary judgment because Moore cannot show intentional discrimination by direct evidence, as she has no admission by the decision maker that her termination was based on her race; and she cannot show intentional discrimination by indirect evidence under the burden shifting method, because she cannot establish two of the required four elements for a prima facie discrimination claim. (DE 22 at 9-11). Finally, LIFE contends that even if the Court were to find that Moore has established a prima facie case, LIFE should still be granted summary judgment because it has provided a legitimate, non-discriminatory reason for her termination, and Moore cannot meet her burden to show that this proffered reason is mere pretext for race discrimination. (DE 22 at 15-17).

In Moore's response to LIFE's motion,[4] she states that she "was discriminated and treated unfairly based on [her] ethnicity group" as an African American, and she contends that she believes summary judgment should be denied because she has provided "substantiated documents" and because of "the lack of substantial documentation that was submitted by [LIFE]." (DE 37 at 1). Moore also argues in her response that LIFE has filed fraudulent information with the courts, although she does not specify what documents are fraudulent. (DE 37 at 1). Additionally, Moore states that LIFE does not have her original time sheets or her original daily visit notes with her original signature, but she does not explain why LIFE's alleged lack of original documents matters. Moore further states that a conflict of interest existed, as Moore's supervisor, Avnion Folks, was also supervising Ms. Folks's sister, daughter, and cousin. (DE 37 at 1). Moore contends that the sister, daughter, and cousin were "able to leave without permission without clients." (DE 37 at 1). Moore does not explain how this alleged conflict of interest pertains to her claims of race discrimination; she does not allege the race of Ms. Folks or her family members. Moore also argues that Reinbolt has "been commiting Medicaid fraud for several years and was not disciplined and is now under investigation for the same exact reason that [Moore] was terminated for." (DE 37 at 1). Moore does not explain how Reinbolt being investigated for Medicaid fraud is relevant to her claim against LIFE for racial discrimination. Finally, Moore concludes that she "was discriminated and treated unfairly" on the basis of her race, because she "was an excellent employee that had no prior corrective actions" before her termination. (DE 37 at 1).

---

[4] While Moore's response does not set forth admissible evidence to establish the facts for purposes of summary judgment, as discussed above, Moore's response will be considered by the Court for the arguments it makes.

In LIFE's reply brief, it contends that it should be granted summary judgment because Moore has failed to identify the material facts she contends are genuinely disputed in order to preclude summary judgment. (DE 38 at 1). Furthermore, LIFE argues that in the alternative, if the Court finds that sufficient factual disputes exist, LIFE argues that it is nevertheless entitled to summary judgment because Moore has failed to meet her burden of demonstrating that similarly situated employees were treated more favorably. (DE 38 at 1-2). LIFE also reiterates arguments made in its memorandum in support of its motion for summary judgment, namely that LIFE is entitled to the common actor presumption of nondiscrimination, and that Moore cannot show that LIFE would not have terminated her employment but for her race under the direct evidence or indirect burden shifting method. (DE 38 at 2-8).

The Court will address each of LIFE's arguments as to why it is entitled to summary judgment on Moore's claims against it, as follows.

### 1. Moore Has Failed to Establish Material Facts in Genuine Dispute to Preclude Summary Judgment

LIFE argues in its reply brief in support of its motion for summary judgment that Moore has failed to identify the material facts that she contends are genuinely disputed so as to preclude summary judgment in LIFE's favor and to make a trial necessary. (DE 38 at 1). The Court agrees.

Here, Moore has failed to present any admissible evidence in opposition to LIFE's motion for summary judgment and failed to submit a "Statement of Genuine Disputes" as required by the local rules. N.D. Ind. L.R. 56-1(b)(2). Thus, the Court is left to rely upon the evidence submitted by LIFE in support of its motion for summary judgment. *Waldridge*, 24 F.3d at 922.

Given the facts as set out in Moore's deposition testimony, the affidavits of Reinbolt and Boeslund, as well as the other documents submitted by LIFE as exhibits, there appear to be only minimally disputed facts. The sole dispute, regarding the specific hours that Moore worked on July 2, 2011, appears to exist between Boeslund's affidavit testimony and Moore's deposition testimony and completed time card. Boeslund states in her affidavit that when she arrived at the house at 12:30 p.m. and at 6:00 p.m. on July 2, 2011, Moore was not at the house. (DE 21-3 ¶ 2). Moore, however, states in her deposition testimony that she worked until 3:30 p.m., when she left to assist her father with a family emergency involving her grandmother. (DE 21-1 at 25, 29). Additionally, when Moore completed her time sheet for June 2, 2011, she stated that she had worked from 7:00 a.m. to 3:30 p.m. and then again from 6:00 p.m. to 8:00 p.m. (DE 21-2 at 14).

While this is a factual dispute, it will not necessarily preclude summary judgment.

> Not all disputes of fact preclude summary judgment. Such factual disputes must be both material *and* genuine. Fed. R. Civ. P. 56(a). The underlying substantive law governs whether a factual dispute is material: "irrelevant or unnecessary" factual disputes do not preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Once the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute. *Hudson Ins. Co. v. City of Chicago Heights*, 48 F.3d 234, 237 (7th Cir. 1995). Mere "metaphysical doubt as to the material facts" is not enough. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

*Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Indeed, the Seventh Circuit has noted that Supreme Court case law makes it clear that, "if the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material

question, then the court *must* enter summary judgment against her." *Waldridge*, 24 F.3d at 920 (7th Cir. 1994) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87; *Celotex Corp.*, 477 U.S. at 322-24; *Anderson*, 477 U.S. at 249-52).

The factual dispute regarding when Moore left and returned to the house on July 2, 2011, is not a material fact in genuine dispute to preclude entry of summary judgment, because, even assuming the facts in the light most favorable to Moore, that she worked until 3:30 p.m. and returned promptly at 6:00 p.m., a reasonable jury could not return a verdict for Moore; the facts, including this favorable inference to Moore, show that LIFE is entitled to summary judgment as a matter of law, as discussed in greater detail below.

### 2. LIFE Is Not Entitled to Summary Judgment as a Matter of Law Under the Common Actor Presumption of Nondiscrimination

LIFE argues that it is entitled to summary judgment as a matter of law under the common actor presumption of nondiscrimination because Moore was both hired and fired by the same decision-maker, Reinbolt, and it is therefore "highly doubtful" under common sense "that during the less than three years between hiring and firing Reinbolt suddenly developed an aversion to Moore because of her race." (DE 22 at 8-9). LIFE cites to several Seventh Circuit cases in support of its contention that it is entitled to the common actor presumption of nondiscrimination. (DE 22 at 9 (citing *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 399 (7th Cir. 1997); *E.E.O.C. v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 152 (7th Cir. 1996); *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 457 n.5 (7th Cir. 1999)).

The Seventh Circuit, however, has "rejected the notion that a common actor hiring and later firing an employee creates a *presumption* of nondiscrimination . . . ." *Rapold v. Baxter Int'l,*

15

*Inc.*, 718 F.3d 602, 614 (7th Cir. 2013) (citing *Blasdel v. Nw. Univ.*, 687 F.3d 813, 820 (7th Cir. 2012)). "When the same person hires and later fires the employee who claims that his firing was discriminatory, judges are skeptical, because why would someone who disliked whites, or Germans, or members of some other group to be working for him have hired such a person in the first place?" *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 747 (7th Cir. 2002) (citations omitted). This "skepticism" does not create a "presumption of nondiscrimination, as that would imply that the employee must meet it or lose his case"; instead "[i]t is just something for the trier of fact to consider." *Id.* (citations and internal quotation marks omitted). While "the same-actor inference is unlikely to be dispositive in very many cases," the Seventh Circuit has "approved its use 'as a convenient shorthand for cases in which a plaintiff is unable to present sufficient evidence of discrimination.'" *Harris v. Warrick Cty. Sheriff's Dep't*, 666 F.3d 444, 449 (7th Cir. 2012) (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 745 (7th Cir. 1999)) (citing *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 455 (7th Cir. 2009), for its "finding that the same-actor inference can be 'one more thing stacked against' a plaintiff")).

Thus, LIFE is not entitled to summary judgment as a matter of law merely because Moore has failed to rebut the same-actor inference, as the same-actor inference is not dispositive. The Court may consider it, however, as part of the analysis into whether Moore can survive summary judgment.

### 3. LIFE Is Entitled to Summary Judgment Because Moore Cannot Show Intentional Discrimination Under Either the Direct Evidence Method or the Indirect Burden Shifting Method

"Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Preddie v. Bartholomew Consol. Sch. Corp.*, — F.3d —, 2015 WL 5005203, at *7 (7th Cir. Aug. 24, 2015) (quoting 42 U.S.C. § 2000e-2(a)(1)). Additionally, under Section 1981, "[i]t is also unlawful for any individual—including an employer—to discriminate on the basis of race in the creation and enforcement of contracts." *Id.* (citing 42 U.S.C. § 1981). A plaintiff "may prove discrimination under Title VII and Section 1981 either directly or indirectly." *Id.*

"Under the direct method, a plaintiff must show that his employer made an adverse employment decision 'on an impermissible discriminatory basis.'" *Id.* (quoting *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 234 (7th Cir. 2014)). Moore has offered no direct evidence that she was fired because of her race; she must therefore rely on the indirect method of proving that she was discriminated against because of her race.

"Under the indirect method of proof, a plaintiff meets his initial burden by showing that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he was subject to an adverse employment action; and (4) similarly situated employees who were not members of the protected class were treated more favorably." *Id.* (citing *Andrews*, 743 F.3d at 234). "If a plaintiff establishes a prima facie case of discrimination, only then must the employer 'articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual.'" *Id.* (citing *Andrews*, 743 F.3d at 234).

Here, Moore cannot meet her initial burden of proof to establish a prima facie case of discrimination for her Title VII and Section 1981 claims. While Moore is an African American

woman whose employment was terminated by LIFE, and she is therefore a member of a protected class who was subject to an adverse employment action, Moore has failed to show that she was meeting her employer's legitimate expectations and that similarly situated employees were treated differently.

While Moore vaguely argues in her response that Caucasian employees were treated differently, in that they left the house without permission (DE 37 at 1-3), she does not provide any evidence that she has any knowledge regarding how these employees were treated by LIFE. In fact, while Moore stated in her deposition that she observed white employees leaving the work site about twice per month, she stated that she never reported their behavior to a supervisor; she never saw their time sheets; she never asked why they were leaving; and she would not know if those employees had talked to their supervisor beforehand. (DE 21-1 at 17-19). Additionally, Moore has not shown that she was meeting her employer's legitimate expectations, because while she states in her response that she "was an excellent employee that had no prior corrective actions" against her, Moore admitted during her deposition testimony that she left the house on May 21, 2011, to purchase ant bait (DE 21-1 at 20), and the only evidence in the record is that she did so without permission (DE 21-2 ¶ 8). Additionally, Moore admitted during her deposition testimony that on July 2, 2011, she left the house to handle a family emergency without informing her supervisor or one of the owners of LIFE (DE 21-1 at 23-24, 28), despite her awareness of the company's policy and training that employees should call their supervisor or one of the owners if they could not work (DE 21-1 at 11-12, 15). Moore also admitted that she knew there had to be two staff persons in the house at all times (DE 21-1 at 13-14), but when she left work on July 2, 2011, she knew there was only one direct care staff person in the house (DE

21-1 at 30). For these reasons, the Court finds that Moore has not established a prima facie case of discrimination under Title VII or Section 1981, and thus LIFE's motion for summary judgment will be granted.

### III.  CONCLUSION

For the foregoing reasons, LIFE's motion to strike (DE 39) is GRANTED and LIFE's motion for summary judgment (DE 21) is GRANTED. The Clerk is DIRECTED to enter judgment in favor of LIFE and against Moore.

SO ORDERED.

Entered this 15th day of September 2015.

s/ Susan Collins  
Susan Collins,  
United States Magistrate Judge